UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MICHAEL P. O'BANION and PATRICIA R. BRADLEY,<br><br>        Plaintiffs,<br><br>    v.<br><br>SELECT PORTFOLIO SERVICES, INC., a corporation; LITTON LOAN SERVICING, LP, a limited partnership; JUST LAW, INC., a corporation; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a corproation; DISCOVER LENDING GROUP, an assumed business name of LC Lending Corporation, a corporation; and OWNIT MORTGAGE SOLUTIONS, INC., a corporation;<br><br>        Defendants. | Case No. 1:09-CV-249-EJL<br><br>**REPORT AND RECOMMENDATION** |

## INTRODUCTION

Currently pending before the Court are two Motions to Dismiss, one filed by

Defendants Select Portfolio Services, Inc. ("SPS") and Mortgage Electronic Registration

Systems, Inc. ("MERS") (Docket No. 28); and one filed by Defendants Litton Loan

Servicing, LP ("LLS") and Mortgage Electronics Registration Systems, Inc. ("MERS")

(Docket No. 45).[1]  The Motions are fully briefed[2] and with the Court being full advised,

the Court issues the following Report and Recommendation.

## BACKGROUND

Plaintiffs Michael O' Banion and Patricia Bradley ("Plaintiffs") filed this lawsuit

against Defendants Select Portfolio Services, Inc. ("SPS"), Litton Loan Servicing, LP

("LLS"), Just Law, Inc. ("JL"), Mortgage Electronic Registration Systems, Inc.

("MERS"), Discover Lending Group ("DLG"), and Ownit Mortgage Solutions, Inc.

("OM") on May 22, 2009.  The Complaint includes several causes of action, all based

upon a contract for a "refinance mortgage loan on their residential real property" that the

Plaintiffs entered into on July 7, 2006.  (Complaint ¶ 35, Docket No. 1.)

Prior to consummation of the loan transaction, Plaintiffs allegedly met in person

with a broker, Defendant Discover Lending Group ("DLG"), to discuss the terms of their

desired loan.  Allegedly, Plaintiffs expressly advised DLG that they wanted a

conventional loan program with payments in accordance with their financial abilities.

(Complaint Exhs. C1 and C2, Docket No. 1.)  DLG later advised Plaintiffs that it had

located a loan program, allegedly leading Plaintiffs to believe that they were being placed

into a "conventional, fixed rate loan, which they could afford to repay, based on their

---

[1] Defendants Just Law, Inc., Discovery Lending Group, and Ownit Mortgage
Solutions, Inc., did not file motions to dismiss.  Therefore, the analysis in this Report and
Recommendation relates onlyto Defendants Select Portfolio Services, Inc., Litton Loan
Servicing, LP, and Mortgage Electronic Registration Systems, Inc.

[2] Pursuant to Dist. Idaho Loc. Civ. R. 7.1, the Court finds oral argument on these
motions unnecessary.

income, assets, and other information provided to Defendant DLG." (Complaint ¶39, Docket No. 1.)  Instead, Plaintiffs claim they were tricked into signing a contract for a "high cost" or "Adjustable Rate Balloon Loan" – what Plaintiffs refer to as a "bait and switch" scheme.  (Complaint ¶ 52, Docket No. 1.)

Plaintiffs also contend that, during the application and loan consummation process, Defendants DLG, OM, and LLS violated the Truth in Lending Act ("TILA") by intentionally failing to provide early disclosures regarding the loan terms as well as providing inaccurate or incomplete disclosures at the time of closing to induce Plaintiffs to enter into the "high cost" loan transaction.  With respect to all other Defendants, Plaintiffs allege that they are liable for these TILA violations and the alleged fraud because they played some role or otherwise took part in Plaintiffs' loan and had knowledge of the defective disclosures because they are "evident on the face of the documents." (Complaint ¶¶  3, 52, Docket No. 1.)

As a result of the alleged "bait and switch" scheme, Plaintiffs claim they were forced into a "second loan program" and were subjected to "a calculated and pre-determined, manufactured default by defendants resulting in foreclosure proceedings instituted by Defendants SPS, MERS, JL on behalf of OM."  (Complaint ¶ 64, Docket No. 1.) Defendants SPS, MERS, and LLS filed motions to dismiss regarding the majority of the claims included in the Complaint.  The Court will address each claim in turn.

**DISCUSSION**

*A. Standard*

To survive a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a complaint must contain more than a "formulaic recitation of the elements of a cause of action, instead it must contain sufficient allegations to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007). "The pleading must contain something more... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id. Quoting* 5 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE 1216 pp. 235-236 (3d 3e. 2004). "In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). In making its determination, the court must accept all of the allegations in the complaint as true and construe them in the light most favorable to the plaintiff.

Pro se pleadings are held to less stringent standards than those drafted by lawyers. *Stewart v. Mortgage Electronic Registration Systems Inc., et al*, 2010 WL 1054383 (D. Or. 2010) *citing Haines v. Kerner*, 404 U.S. 519, 520 (1972). Specifically, a pro se plaintiff is entitled to notice of the deficiencies in the complaint and an opportunity to amend unless the deficiencies cannot be cured by amendment. *Id. citing Noll v. Carlson,* 809 F.2d 1446, 1448 (9th Cir. 1987). However, "a pro se plaintiff's claims may be dismissed where it appears beyond doubt that the plaintiff can prove no set of facts in

support that would entitle him to relief." *Id. citing Barrett v. Belleque*, 554 F.3d 1060, 1061 (9th Cir. 2008).

### B. Count 1- Fair Debt Collection Practices Act

Count I alleges violations of the Fair Debt Collection Practices Act against Defendant "JL" or Just Law, Inc. Defendants SPS and MERS contend that, because Count I is not directed against them, it must be dismissed against MERS and SPS. Plaintiff does not contest this conclusion, instead agreeing that Count 1 was not intended to be brought against Defendants SPS and MERS. Therefore, to the extent the Complaint could be interpreted to assert a claim against SPS and MERS under Count 1, the Court will recommend that Count 1 be dismissed.

### C. Count II - Truth in Lending Act

Count II alleges violations of the Truth in Lending Act ("TILA") against Defendants "OM," "LLS," and "SPS."[3] Defendant SPS argues that this count should be dismissed because SPS is a loan servicer and is not liable under TILA. Similarly, SPS argues that it is not a creditor under 15 U.S.C. §1602(f), because a creditor is one who regularly extends credit and is the person to whom the subject loan is originally payable. Finally, Defendant SPS contends that, because it was not involved in the origination of the subject loan, it could not have been a part of any TILA violations at the time the loan

---

[3] Defendants MERS and SPS contend that, because MERS is not named as a Defendant to this Count, it should also be dismissed against MERS. Plaintiffs agree that MERS was not intended to be a Defendant to this claim. (Plaintiffs' Response p. 13, Docket No. 43). Therefore, to the extent Count II could be interpreted to state a claim against MERS, the Court will recommend that Count II be dismissed.

was created.

Defendant LLS also moved to dismiss the TILA claims against it and MERS. (Memo. in Support, Docket No. 46.)  However, in Plaintiffs' Response to LLS and MERS' Motion to Dismiss (Docket No. 48), Plaintiffs admit that LLS was named in error as a Defendant to Count II.  Therefore, the Court will recommend dismissal of Count II as it relates to Defendant LLS.

### *(1) The Truth in Lending Act ("TILA")*

TILA"requires creditors to provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights." *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998).  Failure to satisfy TILA's requirements exposes a lender to "statutory and actual damages [that are] traceable to a lender's failure to make the requisite disclosures." *Id*.   Violations of TILA give rise to remedies of both damages and rescission.[4] *Stewart v. Mortgage Electronic*

---

[4] No statute of limitations arguments were made with respect to Plaintiffs' claims for rescission; however, with respect to rescission claims under TILA, the borrower generally has until midnight of the third business day following the consummation of the loan transaction to rescind the transaction under 15 U.S.C. §1635(a).  The borrower's right of rescission is extended from three days to three years if the lender: (1) fails to provide notice of the borrower's right of rescission; or (2) fails to make a required material disclosure.  Material disclosure "means the required disclosures of the annual percentage rate, the finance charge, the amount financed, the total payments, the payment schedule, and the disclosures and limitations referred to in §226.32(c) and (d) and §226.35 (b)(2)." 12 CFR § 226.35(a)(3) n. 48. However, "[a]n obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this part have not been delivered to the obligor." 15 U.S.C. §1635(f).

*Registration Systems* 2010 WL 1054384 (D. Or. Feb. 18, 2010). Plaintiffs are claiming both remedies with their TILA claims.

### *(2) Statute of Limitations with respect to Plaintiff's damages claims under TILA*

Defendants MERS and LLS argue that Plaintiffs' damages claims under TILA are untimely under 15 U.S.C. §1640(e). Based on the allegations in the Complaint, the Court agrees.

Damages claims must be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e); *see also King v. California*, 784 F.2d 910, 915 (9th Cir. 1986). However, equitable tolling may be appropriate "in certain circumstances" where, for example, there is evidence of "fraudulent concealment which by its very nature, if true, serves to make compliance with the limitation period imposed by Congress an impossibility." *King*, 784 F.2d at 915 (internal citations omitted); *see also Sipe v. Countrywide Bank*, 690 F.Supp. 2d 1141, 1148 (E.D. Ca. 2010); *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1178 (9th Cir. 2000), and *Meyer v. Ameriquest Mortgage Co.*, 342 F.3d 899, 902 (9th Cir. 2003). It is the plaintiff's burden to establish entitlement to tolling of the limitations period. *See Pace v. DiGuglielmo*, 544 U.S. 408 (2005).

Here, Plaintiffs signed the loan documents on July 7, 2006,[5] making July 7, 2007, the deadline for commencing a TILA damages action. (Complaint at Exhs. A, D, G, Docket No. 1.) As previously noted, Plaintiffs filed their Complaint on May 22, 2009, almost two years after the deadline had passed. Despite Defendants LLS and MERS

---

[5] Plaintiffs contend in their Complaint that the contract was consummated on July 7, 2006. (Complaint ¶ 32, Docket No. 1.)

raising the statute of limitations argument in their Motion to Dismiss (Memo. In Support p. 2, Docket No. 46), Plaintiffs have made no argument in response as to why the statute of limitation should be tolled in this case. Instead, the alleged TILA deficiencies, according to Plaintiffs' Complaint, were "evident on the face of the loan documents." (Complaint ¶ 3, 52, Docket No. 1.) Based on the allegations in the Complaint, the Court finds there is no reason why Plaintiffs were unaware of and could not have brought their damages claims under TILA within the one year limitations period.[6] Therefore, the Court will recommend that the Plaintiff's claims for damages under TILA be dismissed. However, in an abundance of caution, the Court also will recommend allowing the Plaintiff to amend the Complaint to include any allegations that could demonstrate that equitable tolling should apply.

### (3) *Plaintiffs TILA Rescission Claims*

A majority of courts have held that "[p]laintiff must allege (subject to Rule 11) an ability to tender in order to state a claim for rescission under TILA and Regulation Z." *Sipe v. Countrywide Bank.*, 690 F.Supp.2d 1141 (E.D. Ca 2010) *quoting Garcia v.*

---

[6] As the Ninth Circuit held in *Meyer v. Ameriquest,*

The failure to make the required disclosures occurred, if at all, at the time the loan documents were signed. The Meyers were in full possession of all information relevant to the discovery of a TILA violation and a §1640(a) damages claim on the day the loan papers were signed. The Meyers have produced no evidence of undisclosed credit term, or of fraudulent concealment or other action on the part of Ameriquest that prevented Meyers from discovering their claim.

*Meyer*, 342 F.3d at 902.

**REPORT AND RECOMMENDATION - 8**

*Wachovia Mortgage Corp.*, 676,F.Supp.2d 895, 904-5 (C.D. Cal. 2009); *see also Yamamoto v. Bank of N.Y,*, 329 F.3d 1167, 1171 (9th Cir. 2003) ("Rescission should be conditioned on repayment of the amounts advanced by the lender.")   This is based on the equitable goal of rescission under TILA which seeks "to restore the parties to the status quo ante." *Id. quoting Am. Mortgage Network, Inc. v. Shelton*, 486 F.3d 815, 820 (4th Cir. 2007).

Defendant LLS argues that Plaintiffs' rescission claims fail because Plaintiffs allegations do not include any mention of a plan or ability to return the funds distributed at closing almost four years ago. (Memo. in Support p. 7, Docket No. 46. ) Absent such allegations, Plaintiffs TILA claim for rescission is subject to dismissal.  However, as discussed above, pro se plaintiffs are entitled to notice of the deficiencies in their complaint and an opportunity to amend.  Therefore the Court will recommend that the motion to dismiss damages claims in Count II be granted, but that Plaintiffs be allowed the opportunity to amend their Complaint regarding their claim for rescission.

### *(4) Is SPS a creditor under TILA*

Finally, SPS argues that the TILA claims should be dismissed because it is not a creditor under TILA and therefore cannot be liable for any alleged violations, citing *Guerrero v. Citi Residential Lending*, 2009 WL 926973 (E.D. Ca. 2009).

15 U.S.C. §1602 defines a creditor as:

> ...a person who both (1) regularly extends, whether in connection with loans, sales of property or services , or otherwise consumer credit which is payable by agreement of more than four installments or for which payment of a finance charge is or may be required , and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or if there is no such evidence of indebtedness, by agreement. 15 U.S.C. 1602(f).

Additionally, the Court notes that assignees of creditors have limited liability under TILA. 15 U.S.C. §1641 (a). However, "[a] servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as an assignee of such obligation for the purposes of this section unless the servicer is or was the owner of the obligation." 15 USC 1641(f)(1). The term "servicer" under TILA is defined by reference to 12 U.S.C.A. §2605 as the "person responsible for servicing of a loan. Servicing of the loan means receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan...."

Plaintiffs contend that SPS is more than a mere servicer because SPS has identified itself in communications with Plaintiffs and the United States Bankruptcy Court as both a mortgagee and a secured creditor. (Response p. 13-15, Docket No. 43.) However, Plaintiffs refer to documents and evidence that was not part of the Complaint or attached to the Complaint and generally would not be considered with respect to a motion to dismiss.[7] Furthermore, if the Court considers the evidence presented by Plaintiffs, Defendants must be provided the opportunity to present evidence on the issue. Therefore,

---

[7] The actual documents referenced by Plaintiffs in their Response have not been filed with the Court.

**REPORT AND RECOMMENDATION - 10**

at this time, the Court will refrain from analyzing this argument or ordering the parties to provide further briefing until it has the opportunity to review Plaintiffs' amended complaint, if filed, under the standard set forth above in section 3.

### D. Count III- Aiding and Abetting Fraud

Count III alleges that all Defendants in the action aided and abetted fraud (Complaint ¶¶96-105, Docket No. 1.) Defendants MERS, SPS, and LLS argue that this count should be dismissed, because none of the moving Defendants were involved with or made any of the representations that allegedly form the basis of Plaintiffs' fraud claims. Further, Defendants contend that Plaintiffs' allegations do not satisfy the particularity requirements of Fed. R. Civ. P. 9(b).

Under Idaho law, there are nine elements which must be established to state a cause of action for fraud: (1) a statement or representation of fact; (2) its falsity; (3) its materiality; (4) speaker's knowledge of its falsity; (5) speaker's intent that representation will be acted upon in a reasonably contemplated manner; (6) listener's ignorance of its falsity; (7) listener's reliance on truth of representation; (8) listener's right to rely on truth of representation; and (9) listener's consequent and proximate injury. *Hayes v. Kingston*, 140 Idaho 551, 555 (2004). "The misrepresentation is the crux of a fraud claim and the element that causes the injury." *Id.*

Persons who aid and abet another in the commission of a fraud also may be liable for that fraud. 37 Am. Jur. 2d *Fraud and Deceit* §302 (2010). However, the plaintiff must allege and prove in addition to the perpetration of the underlying fraud that there

was knowledge of this fraud on the part of the aider and abettor; there was substantial assistance by the aider and abetter in the achievement of the fraud; and, that damages to the plaintiffs were proximately caused thereby.[8] *Id.*

Finally, under Fed. R. Civ. P. 9(b), the circumstances constituting fraud or mistake must be plead with particularity. A pleading is sufficient under Rule 9(b) if it "is specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee v. California,* 236 F.3d 1014, 1019 (9th Cir. 2001) (internal citations omitted.) To satisfy this standard, plaintiffs must offer the "who, what, when, where, and how" in support their fraud allegations. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). Generally, aiding and abetting fraud claims are held to the same heightened pleading standard. *Neilsen v. Union Bank of California*, N.A., 290 F.Supp.2d 1101 at n. 81 (C.D. Cal. 2003).

Defendants MERS, SPS, and LLS argue that, because they did not make any of the representations that Plaintiffs allege were false, the fraud claim should be dismissed against them. Specifically, Defendants contend that the alleged misrepresentations forming the basis of Plaintiffs' fraud claims were, according to the Plaintiffs' own Complaint, made by Defendant DLG regarding Plaintiffs' application for loan refinancing, negotiation of the loan terms, origination of the loan, and through the various

---

[8] Some jurisdictions do not recognize aiding and abetting fraud as a tort claim. However, the issue has not been addressed in Idaho law to date. Therefore, for the sole purpose of resolving this motion, the Court will assume that Idaho law would recognize a tort for aiding and abetting fraud.

original loan documents including good faith estimates and TILA disclosures. Although Defendants MERS, SPS, and LLS may not have been involved in the alleged fraudulent misrepresentations by Defendant DLG, reading the Complaint in the light most favorable to Plaintiffs, it alleges that Defendants were aware of the fraud or the "bait and switch" scheme. Further, it alleges that Defendants provided substantial assistance to *continue* the alleged fraud after the loan documents had been signed, resulting in injury to Plaintiffs. (Complaint ¶ 99-103, Docket No. 1.) In theory, these allegations state a claim under Idaho law.

However, with respect to Defendants' second argument, the Court finds that the "notice of the fraud" element of the aiding and abetting fraud claim is not correctly plead or plead with sufficient particularity under the heightened pleading requirement of Fed. R. Civ. P. 9(b). The Complaint contends that Defendants were aware of the "bait and switch" scheme "through, among other things: (a) the Exhibits listed above and attached hereto; and (b) the title policy issued by LANDAMERICA TRANSNATION." (Complaint ¶ 101, Docket No. 1.) The exhibits attached to the Complaint are unrelated to the alleged misrepresentations by Defendant DLG regarding the loan terms. Further, to the extent the attachments do include any evidence of the "bait and switch" scheme, there is no indication in the Complaint that these documents, particularly the applications for loan, ever were provided to the Defendants who are moving to dismiss this claim.

Further, the Court fails to see, and the Plaintiffs fail to articulate, how a title policy would put Defendants MERS, SPS, and LLS on notice that Defendant DLG made fraudulent misrepresentations to Plaintiffs to induce them into entering into the loan

agreement.  The Complaint does allege that the TILA violations were evident on the face

of the loan documents; however, notice of the TILA violations does not translate into

notice of the "bait and switch" scheme.  Instead, the Complaint is void of allegations

identifying how Defendants allegedly learned that Plaintiffs were induced into entering

into a transaction with Defendant OM that was different than what they thought they had

been promised by Defendant DLG.  Without such allegations, the Plaintiffs have not

sufficiently plead their aiding and abetting fraud claim.[9]  Therefore, the Court will

recommend that the motions to dismiss Count III filed by LLS, SPS, and MERS be

granted but that Plaintiffs be allowed leave to amend.

### E.  Count IV - Fraudulent Misrepresentation

Count IV of Plaintiffs' Complaint alleges fraudulent misrepresentation.   The

elements of fraudulent misrepresentation under Idaho law are the same as those identified

above with respect to the fraud claim.  *See Deutz-Allis Credit Corp v. Bakie Logging*, 121

Idaho 247, 251(Idaho App. 1992).  With that in mind, Defendants contend that the

allegations in Count IV are simply a restatement of the claim in Count III and ought to be

dismissed for the same reasons.

Preliminarily, the Court notes that Count IV of Plaintiffs' Complaint appears to

include several allegations against different Defendants not specifically raised in Count

---

[9]  With respect to the underlying fraud claim for alleged misrepresentations made
on the part of Defendant DLG, the Court finds that Plaintiffs' Complaint provides enough
information regarding the "who, what, when, where, and how" to allow the Defendants to
respond substantively to those allegations at this stage of the proceeding.  Therefore, the
Court finds that the Fed. R. Civ. P. 9(b) standard is satisfied.

III.  In Count III, the underlying fraud appears to be based solely on the alleged misrepresentations made by Defendant DLG in order to induce Plaintiffs to enter into the loan transaction.  These allegations also are included in Count IV; however, additional allegations in Count IV indicate that Defendant LLS was involved in the TILA violations that induced Plaintiffs to enter into the loan agreement.

With respect to this claim against LLS, the Court finds that Plaintiffs have failed to satisfy the heightened pleading requirements for fraud under Rule 9(b).  Plaintiffs' Complaint is void of allegations regarding any of the other eight elements of a fraudulent misrepresentation claim with respect to alleged fraudulent actions committed by LLS. Without specific factual allegations regarding the other elements of fraudulent misrepresentation and clarification regarding what Defendant LLS' misrepresentations consisted of, the claim against Defendant LLS should be dismissed.

Unrelated to the allegations previously addressed, Count IV also alleges that Defendants JL, SPS and LLS "made knowingly false misrepresentations about Plaintiffs' mortgage payment history including the frequency and timeliness of said payments, amounts purported as being delinquent, affidavits pledging lost note and account affidavits, amounts of purported averages, and purported missed payments in order to justify instituting a foreclosure."  (Complaint ¶110, Docket No. 1.)   Plaintiffs further allege that, but for these misrepresentations, they would not have entered into the "transactions [that are] the subject of this action."  (Complaint ¶ 112, Docket No. 1.) As argued by Defendants, these allegations are illogical when taken in context of the Complaint as a whole.  It is impossible that misrepresentations made <u>after</u> the

consummation of the loan transaction induced Plaintiffs to enter into the loan transaction. Therefore, if Plaintiffs wish to pursue Count IV with respect to these Defendants, Plaintiffs must include specific allegations relating to the full complement of elements of fraudulent misrepresentation, including clarification regarding when and in what form these alleged misrepresentations were made, as well as what damages or injury to the Plaintiffs these misrepresentations allegedly caused. Without such clarification, Count IV as alleged against Defendants SPS and LLS should be dismissed.

Finally, the Court notes Count IV and the rest of the Complaint do not include any allegations indicating that MERS, besides allegedly having aided and abetted or conspired with other Defendants in Counts III and VI, made any fraudulent misrepresentations to Plaintiffs on its own. Despite this, Count IV indicates that it is being stated against all Defendants. If Plaintiffs are attempting to state a claim against MERS for fraudulent misrepresentations that MERS allegedly made to Plaintiffs, Plaintiffs must provide sufficient allegations with respect to its claim against MERS to comply with Rule 9(b). First and foremost, any amended Complaint must identify the specific misrepresentations MERS allegedly made to Plaintiffs.

Based on the foregoing, the Court will recommend that Defendants' motions to dismiss Count IV be granted but that Plaintiffs be allowed leave to amend Count IV to comply with the Court's findings herein.

### F. Count V - Unjust Enrichment

Plaintiffs allege a claim for unjust enrichment in Count V of their Complaint. Unjust enrichment or restitution is a measure of recovery under a contract implied in law.

*Barry v. Pac. West Constr. Inc.*, 140 Idaho 827, 834 (Idaho 2004). A contract implied in law "is an obligation imposed by law for the purpose of bringing about justice and equity without reference to the intent of the agreement of the parties and, in some cases, in spite of an agreement between the parties." *Id. quoting Erickson v. Flynn*, 138 Idaho 430, 434-35 (Ct. App. 2002). To state a claim for unjust enrichment, the Plaintiffs must prove "(1) a benefit conferred upon defendant by plaintiff; (2) appreciation by the defendant of the benefit; and (3) acceptance of the benefit under circumstances that would be inequitable for the defendant to retain the benefit without payment of the value thereof." *Aberdeen-Springfield Canal Co. v. Peiper*, 133 Idaho 82, 88 (1999).

Defendants argue that this claim should be dismissed for three reasons: 1) a cause of action in equity should not lie where the party has an available remedy at law; 2) SPS and MERS were not beneficiaries of the loan because they were not parties involved in the loan origination; and 3) Plaintiffs' damages are too speculative.

The Court acknowledges that a party should not be able to recover in equity if an adequate legal remedy exists. *See Singer Sewing Machine Co v. Benedict*, 229 US 481, 484 (1913). However, Fed. R. Civ. P. (8)(a)(3) allows a party to include demands for relief in the alternative in their pleadings. Therefore, the Court finds it would be premature at this stage in the litigation to dismiss the unjust enrichment claim on the first ground asserted by Defendants.

 Plaintiffs allege that Defendants were unjustly enriched as a result of Defendants' violations of TILA and Regulation Z. Defendants SPS and MERS argue that they cannot be liable for unjust enrichment because they are not liable under TILA or for the fraud

**REPORT AND RECOMMENDATION - 17**

claims, and because they were not responsible for the origination of the loan. As the Court is recommending allowing Plaintiffs leave to amend their Complaint with respect to the TILA and fraud claims, the Court cannot determine, at this point, whether SPS and MERS could be liable under those claims. Therefore, the Court will not recommend dismissal of Count V based upon the second argument asserted by Defendants.

Finally, Defendant LLS contends that Defendants were not unjustly enriched by their allegedly wrongful actions because they distributed funds to Plaintiffs which have yet to be re paid. The Court believes that this argument may have merit, however only with respect to the Defendants who actually owned the obligation and who have yet to be re paid. Here, Plaintiffs' Complaint alleges that payments made to Defendants LLS, SPS, MERS and JL as a result of this fraudulent scheme caused these Defendants to be unjustly enriched. This is unrelated to repayment of the loan principal to the party who owns the debt. Therefore, the Court cannot recommend dismissal of Plaintiffs' unjust enrichment claims against the moving Defendants and will, instead, recommend Defendants' motions to dismiss with respect to Count V be denied.

### G. Count VI - Civil Conspiracy

Plaintiffs final claim alleges civil conspiracy against all Defendants, and Defendants contend this claim must be dismissed because Idaho does not recognize an independent cause of action for civil conspiracy. *Mannos v. Moss*, 143 Idaho 927, 935 (2007). Defendants also contend that Count VI fails due to Plaintiffs' lack of evidence demonstrating any agreement between or among the Defendants.

A civil conspiracy exists only "if there is an agreement between two or more to

accomplish an unlawful objective or to accomplish a lawful objective in an unlawful manner...." *Id.* at 1174 *quoting McPheters v. Maile*, 138 Idaho 391, 295 (2003).  Reading the Complaint in the light most favorable to Plaintiffs, it appears they are attempting to state a claim for conspiracy to defraud.  The Complaint alleges that "all Defendants, DLG, MERS, LLS, SPS, on behalf of OM had entered into an apparent scheme and conspiracy in order to construct a pre-manufactured theft of sums not due, theft of real property, and its equity, and fraud through the perpetration of a fraud upon the Plaintiffs which was known to all Defendants." (Complaint ¶ 66, Docket No. 1.)

The Idaho Supreme Court in *Mannos v. Moss* articulated the standard with respect to conspiracy to commit fraud.  "The agreement is the foundation of a conspiracy charge and there must be some showing of specific evidence of a plan or agreement to defraud to demonstrate the pendency of the conspiracy at the time the alleged fraud occurred." *Id.* (internal citations omitted).  Further, the Court notes that allegations regarding civil conspiracy to commit fraud generally bring the complaint under the heightened pleading requirement of Rule 9(b). C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE §1233 (3d ed. 2004) *citing Samuel v. Michaud*, 980 F.Supp.1381 (D. Idaho 1996) aff'd 129 F.3d 127 (9th Cir. 1997) (unpublished).

After thoroughly reviewing the Complaint, the Court finds, as noted above, that Count VI does not state a bare civil conspiracy claim. Therefore, the Court cannot recommend dismissal on those grounds.  Further, however, the Court finds that Plaintiffs' allegations regarding the alleged plan or agreement between and among the Defendants does not rise to the heightened pleading standards applicable to Count VI.  The Complaint

does not include any allegations regarding how the agreement or conspiracy came about and when it was created. Therefore, the Court will recommend that the motions to dismiss be granted with respect to Count VI but that Plaintiffs be allowed the opportunity to amend.

## RECOMMENDATION

**IT IS RECOMMENDED:**

1.     The two motions to dismiss, filed by  Defendants Select Portfolio Services, Inc. and Mortgage Electronic Registration Systems, Inc. (Docket No. 28); and by Defendants Litton Loan Servicing, LP and Mortgage Electronics Registration Systems, Inc. (Docket No. 45) be **GRANTED IN PART AND DENIED IN PART** as explained below**:**

    A.    Defendants' motions to dismiss (Docket Nos. 28, 45) should be **GRANTED** with respect to Counts I, II, III, IV, and VI as to Defendants SPS, MERS, and LLS; however, the Court recommends that Plaintiffs be grantedleave to file an Amended Complaint to cure the deficiencies identified herein.

    B.    Defendants' motions to dismiss (Docket Nos. 28, 45) should be **DENIED** with respect to Count V.

Written objections to this Report and Recommendation must be filed within fourteen (14) days pursuant to 28 U.S.C. § 636(b)(1) and Dist. Idaho L. Rule 72.1(b), or

as a result of failing to do so, that party may waive the right to raise factual and/or legal objections to the United States Court of Appeals for the Ninth Circuit.



DATED: August 13, 2010

_____
Honorable Candy W. Dale
Chief United States Magistrate Judge