UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MICHAEL P. O'BANION and PATRICIA R. BRADLEY,<br><br>                 Plaintiffs,<br><br>v.<br><br>SELECT PORTFOLIO SERVICES, INC.; LITTON LOAN SERVICING LP; JUST LAW, INC.; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; DISCOVER LENDING GROUP; OWNIT MORTGAGE SOLUTIONS, INC.,<br><br>                 Defendants. | Case No. 1:09-cv-00249-EJL-CWD<br><br>**REPORT AND RECOMMENDATION RE:     DKT. 176**<br>           **DKT. 168**<br>           **DKT. 164**<br>           **DKT. 159**<br>           **DKT. 127** |

**INTRODUCTION**

The Court has before it several pending motions, listed above.[1] Among them are

---

[1] Having fully reviewed the record herein, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, the motions will be decided on the record before this Court without oral argument. Dist. Idaho L. Rule 7.1(d).

**REPORT AND RECOMMENDATION - 1**

the parties' cross-motions for summary judgment filed by Plaintiffs Michael O'Banion

and Patricia Bradley, who are appearing pro se in this matter, and the remaining

Defendants, Select Portfolio Services, Inc. ("Select") and Mortgage Electronic

Registration Systems, Inc. ("MERS"). On July 16, 2012, the Court issued an Order and

Report and Recommendation on several discovery related motions, including a

recommendation that Defendant Ownit Mortgage Solutions, Inc. be dismissed from this

matter and ordering that the stay, imposed pursuant to 11 U.S.C. § 362(a) because of

Defendant Ownit's bankruptcy filing, be lifted as a result of the dismissal. District Judge

Edward J. Lodge adopted the Report and Recommendation on August 20, 2012. (Dkt.

201.) Accordingly, the motions are now ripe for review. The Court recommends that

Defendants' Motion for Summary Judgment be granted and Plaintiffs' motion for

summary judgment be denied. As a result, Defendants' motion for preliminary injunction

is moot, and judgment may be entered in favor of Defendants.

## <u>REPORT</u>

## FACTS[2]

On July 6, 2006, Plaintiffs borrowed the sum of $120,000 from Defendant Ownit

Mortgage Solutions, Inc. ("Ownit") pursuant to the terms of an Adjustable Rate Balloon

Note (the "Note"). The Note identified Ownit as the Lender entitled to payment, and

---

[2] Plaintiffs did file a Statement of Disputed Facts and a Statement of Facts, (Dkt. 175-1 and 168-10), but the statements contain additional argument in support of Plaintiffs' motion for summary judgment and do not set forth admissible facts other than what is set forth herein. The Court therefore finds that what follows are the admissible, undisputed and material facts for purposes of deciding the motions for summary judgment.

**REPORT AND RECOMMENDATION - 2**

disclosed that Lender may transfer the Note and the right to receive payment under the Note. The Note further identified where to send payments each month, and informed Plaintiffs they would be notified if the address to send payments changed. Failure to pay constituted a default. Finally, the Note indicated that it was secured by a deed of trust.

The Deed of Trust executed the same date, and recorded as Instrument No. 200655844 on July 12, 2006, in the records of Canyon County, Idaho, identified Ownit as the Lender and LandAmerica Transnation as the Trustee of the trust deed. The deed of trust granted a security interest in Plaintiffs' residence, located at 19765 Susquehanna Way, in Caldwell, Idaho, to secure repayment of the loan. Defendant Mortgage Electronic Registration Systems, Inc. ("MERS") was identified as a separate corporation "acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument." (Dkt. 159-6 at 2.) Further in the document, MERS is described as follows:

> The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (1) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.

(Dkt. 159-6 at 3.)

Plaintiffs acknowledged that MERS "holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom,

**REPORT AND RECOMMENDATION - 3**

MERS (as nominee for Lender and Lenders' successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender. . . ." (Dkt. 159-6 at 4.) Finally, the Deed of Trust informed Plaintiffs that "the Note, or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower," and could result also in a change of the Loan Servicer that collected payments due under the Note. (Dkt. 159-6 at 11.) There could also be "one or more changes of the Loan Servicer unrelated to a sale of the Note." (Dkt. 159-6 at 11.)

If Lender invoked the power of sale under the trust deed because of a default, "Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold." Lender had the authority also to remove the Trustee and appoint a successor Trustee to carry out any required duties of sale. (Dkt. 159-6 at 13.)

The final document Plaintiffs executed on July 6, 2006, was a Loan Servicing Disclosure Statement. The Statement informed Plaintiffs that Ownit intended to assign, sell, or transfer the servicing of the mortgage loan, meaning that payments would be collected by a third party other than the actual lender. (Dkt. 159-4 at 9—10.) Plaintiffs executed a Notice acknowledging that Defendant Litton Loan Servicing LP ("Litton") would be servicing the loan as of July 11, 2006, and informing them where to send payments. (Dkt. 159-4 at 12.) On September 26, 2006, Plaintiffs were provided written

**REPORT AND RECOMMENDATION - 4**

notice that, effective October 2, 2006, Defendant Select Portfolio Servicing, Inc.

("Select"), would be servicing the loan, and payments must be remitted to Select. (Dkt. 159-4 at 15.)

On February 2, 2007, U.S. Bank National Association ("U.S. Bank") under a Limited Power of Attorney appointed Select as its attorney-in-fact, granting Select the power to act on U.S. Bank's behalf as such acts related to the Home Equity Asset Trust 2007-1, Home Equity Pass-through Certificates, Series 2007-1, under the pooling and servicing agreement between Credit Suisse First Boston Mortgage Securities Corp. and U.S. Bank as Trustee of the Home Equity Asset Trust. Select recorded the power of attorney on February 15, 2007. (Dkt. 159-4 at 18.)

On September 29, 2008, Plaintiff Bradley filed a bankruptcy petition under Chapter 7 of the Bankruptcy Code. Defs.' Statement of Facts, ¶¶24-27, (Dkt. 159-2.) [3] Plaintiff O'Banion filed a petition under Chapter 7 of the Bankruptcy Code as well, on January 8, 2008. Defs.' Statement of Facts, ¶¶24-27, (Dkt. 159-2.) [4] On March 28, 2008, Select was granted stay relief in Plaintiff O'Banion's bankruptcy case, and on January 6, 2009, in Plaintiff Bradley's bankruptcy case.

_____

[3] The Court takes judicial notice of Plaintiff Bradley's Chapter 7 bankruptcy case, No. 08-02163-TLM, filed on September 29, 2008. Bradley filed a second petition under Chapter 13 of the Bankruptcy Code on May 26, 2009, but the case was dismissed on August 28, 2009, because she had received a discharge of debts in her Chapter 7 case, and her proposed plan was not able to be confirmed. *See In re Bradley,* Case No. 09-01488-TLM. *See also* Defs.' Statement of Facts, ¶¶24-27, (Dkt. 159-2.)
[4] The Court takes judicial notice of Plaintiff O'Banion's bankruptcy case, No. 08-00039-JDP, filed on January 8, 2008. *See also* Defs.' Statement of Facts, ¶¶24-27, (Dkt. 159-2.)

**REPORT AND RECOMMENDATION - 5**

On April 28, 2008, MERS, acting in its role as the "Beneficiary under [the] Deed of Trust," appointed Just Law, Inc. as the successor trustee. (Dkt. 159-7 at 27.) The appointment of trustee was recorded on May 27, 2008, as Instrument No. 2008028558 in the records of Canyon County, Idaho. On May 2, 2008, MERS executed a Corporate Assignment of Deed of Trust assigning its interest in the deed of trust together with the Note to U.S. Bank, as Trustee on behalf of the holders of the Credit Suisse First Boston Mortgage Securities Corp., Home Equity Pass Through Certificates, Series 2007-1. (Dkt. 159-8 at 2.) The Corporate Assignment also was recorded on May 27, 2008, as Instrument No. 2008028559. The assignment indicated the intent that U.S. Bank would be assigned the interests in the Deed of Trust and Note. The final document recorded on May 27, 2008, as Instrument No. 2008028560, was a Notice of Default, signed on May 21, 2008, by Just Law, Inc. as the Trustee. (Dkt. 159-8 at 4—5.) The Notice indicated U.S. Bank was currently the holder of the beneficial interest under the Deed of Trust.

On July 12, 2011, Select provided Plaintiffs with a payoff statement indicating that Plaintiffs owed $170,900.15 in unpaid principal, interest, escrow fees for property taxes and insurance, late charges, and other fees. (Dkt. 159-4 at 20.) The statement indicated Plaintiffs could tender the balance due to Select at its Salt Lake City address.

Although not dated, the Note bears an endorsement without recourse from Ownit to U.S. Bank, as trustee on behalf of the holders of the Credit Suisse First Boston Mortgage Securities Corp., Home Equity Pass Through Certificates, Series 2007-1, by

**REPORT AND RECOMMENDATION - 6**

Select, its attorney-in-fact. (Dkt. 159-4 at 6—7.) The Court can safely assume that the endorsement of the Note could not have occurred until on or after February 2, 2007, because U.S. Bank had not appointed Select as its attorney-in-fact until that date.

Plaintiffs have provided the MERS MIN Summary and Milestones, which indicates that Ownit registered its interest in the Note with MERS on July 20, 2006. (Dkt. 168-6 at 26.) Litton was identified as the servicer at that time. On October 4, 2006, the MIN Summary indicates there was a "transfer of beneficial rights," and the old investor, Ownit, was replaced with a new investor, Credit Suisse First Boston, LLC. The MIN summary reflects that the servicer changed from Ownit to Select, which change was noted on October 6, 2006. And finally, on January 26, 2007, the MIN summary indicates that another transfer of the beneficial rights occurred, from Credit Suisse First Boston, LLC, to U.S. Bank as Trustee.

## ANALYSIS

### 1.     Remaining Claims and Defendants

The Court recommended that Plaintiffs' motions to dismiss Defendants Just Law, Inc. and Ownit Mortgage Solutions, Inc. be granted. The District Judge adopted the Report and Recommendation. (Dkt. 201.) In addition, Plaintiffs in their Amended Motion for Summary Judgment, (Dkt. 176), recognize that the named Defendant Discover Lending Group, fka Discovery Mortgage, is no longer a defendant because the corporate entity was not named, which is consistent with the Court's November 16, 2011,

Memorandum Decision and Order (Dkt. 131). Plaintiffs therefore acknowledge that the effect of their motions to dismiss and the Court's prior orders leaves only Select and MERS as defendants in this matter.

Further, the Amended Complaint, (Dkt. 63), contained several claims that Plaintiffs have abandoned, both as a result of dismissal of the above defendants and by choice. These claims comprise Count I, a Truth in Lending Act claim for rescission against Select, Ownit, and Discover; Count II, Misrepresentation and Concealment and Fraud in the Factum asserted against Discover and Ownit; Count III, abuse of process and fraudulent misrepresentation against Select and Just Law; and Count V, for unjust enrichment asserted against all defendants. (Dkt. 168, 175, 176.) Plaintiffs represent they are proceeding based solely upon Count IV, for "unlawful default and unlawful foreclosure and fraudulent misrepresentation," against Defendants Select and MERS.

Accordingly, summary judgment should be entered in favor of Defendants on all remaining claims asserted against them with the exception of Count IV, because Plaintiffs no longer are pursuing those claims.

**REPORT AND RECOMMENDATION - 8**

2.      **Summary Judgment Standards**

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of summary judgment "is to isolate and dispose of factually unsupported claims ...." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Material facts are those that may affect the outcome of the case. *Id.* at 248.

The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings. *Id.* at 255. Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

**REPORT AND RECOMMENDATION - 9**

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in his favor. *Id.* at 526–57. The non-moving party must go beyond the pleadings and show by "affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex*, 477 U.S. at 324. The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby*, 477 U.S. at 252.

When, as here, parties submit cross-motions for summary judgment, "each motion must be considered on its own merits." *Fair Housing Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 136 (9th Cir. 2001). The Court must therefore review the evidence submitted in support of each cross-motion. *Id.*

But the Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (quoting *Forsberg v. Pac. Northwest Bell Tel. Co.*, 840

**REPORT AND RECOMMENDATION - 10**

F.2d 1409, 1418 (9th Cir. 1988)). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *So. Ca. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

Only admissible evidence may be considered in ruling on a motion for summary judgment. *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002); *see also* Fed.R.Civ.P. 56(e). In determining admissibility for summary judgment purposes, it is the contents of the evidence rather than its form that must be considered. *Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003). If the contents of the evidence could be presented in an admissible form at trial, those contents may be considered on summary judgment even if the evidence itself is hearsay. *Id.* (affirming consideration of hearsay contents of the plaintiff's diary on summary judgment because at trial, the plaintiff's testimony of contents would not be hearsay).

Statements in a brief, unsupported by the record, cannot be used to create an issue of fact. *Barnes v. Independent Auto. Dealers*, 64 F.3d 1389, 1396 n.3 (9th Cir. 1995). The Ninth Circuit Court of Appeals "has repeatedly held that documents which have not had a proper foundation laid to authenticate them cannot support a motion for summary judgment." *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1182 (9th Cir. 1988).

**REPORT AND RECOMMENDATION - 11**

3.      **Evidentiary Issues**

A.      *Motion in Limine*

Plaintiffs filed a motion in limine (Dkt. 164) to "exclude evidence/information regarding Plaintiffs that is extrinsic to the subject and issues of this lawsuit." Such evidence appears to concern Plaintiffs' living circumstances, but Plaintiffs do not elaborate. Plaintiffs allude also to the nonpayment of their loan. Plaintiffs appear to assert the motion in limine in response to Defendants' motion for preliminary injunction, which motion seeks to collect payment from Plaintiffs during the pendency of this matter. Defendants argue that Plaintiffs' motion, to the extent it responds to Defendants' motion for preliminary injunction, is untimely. Second, Defendants contend that Plaintiffs' failure to pay the loan amounts when due is relevant evidence that supports the Defendants' position that it may foreclose, and that the motion should therefore be denied.

Motions in limine are recognized as tools to prevent irrelevant, inadmissible, or prejudicial matters from being heard by the jury and are generally filed prior to trial, not in conjunction with motions for summary judgment. Fed. R. Evid. 103(a)(2); 75 Am. Jur. 2d Trial § 39. Rather, Fed. R. Civ. P. 56(c)(2) permits objections to factual material on the grounds that the fact cannot be presented in a form that would be admissible in evidence. Accordingly, Plaintiffs' motion will be so construed.

**REPORT AND RECOMMENDATION - 12**

Plaintiffs have not, however, pointed to any specific evidence in the record pertaining to the motion for summary judgment that cannot be presented in a form admissible in evidence. Plaintiffs generally articulate that some evidence is irrelevant, without directing the Court's attention to a particular document or fact. And, to the extent Plaintiffs have not paid their loan, the Court finds the fact of their default relevant to Plaintiffs' claim of wrongful foreclosure. One of the prerequisites for commencing foreclosure is the presence of a default. Idaho Code §45-1505(2). Accordingly, Plaintiffs' Motion in Limine will be denied.

### B.    *Objection to SPS Agent Affidavit*

Defendants' motion for summary judgment is supported by the Affidavit of Mindy Leetham, identified as an officer for Defendant Select and as an appointed agent by Defendant MERS, and who is authorized to provide the affidavit on Defendants' behalf. (Dkt. 159-3.) Her affidavit attests to the authenticity of exhibits A—E, which are documents comprising the loan transaction at issue in this case and are records maintained by Select. The documents are identified as true and correct copies of the Note executed by Plaintiffs on July 6, 2006, the Notice of Assignment of Servicing Rights, a letter from Select to Plaintiffs, a Limited Power of Attorney from U.S. Bank to Select, and a payoff statement from Select. Plaintiffs object to the affidavit, contending that because their evidence establishes that their loan is "null and void," the affidavit was submitted in bad faith. (Dkt. 175-2 at 5.)

**REPORT AND RECOMMENDATION - 13**

Plaintiffs' objection contains an extension of their argument in support of their motion for summary judgment, and is not a proper objection pursuant to Fed. R. Civ. P. 56(c)(2). The affidavit is from an authorized agent of Defendants, and it purports to authenticate both business records and other documents in Select's possession; both purposes are proper under the Rules of Evidence. Fed. R. Evid. 803(6), 901. Moreover, Plaintiffs introduce several of the same documents attached to Ms. Leetham's affidavit in support of their own motion.[5] Accordingly, Plaintiffs' objections to the affidavit are overruled.

### C.   *Admissions of MERS*

In their Amended Motion and Memorandum, (Dkt. 176), Plaintiffs purport to rely upon several admissions deemed admitted by MERS. The Court on July 16, 2012, denied MERS motion to withdraw or amend its deemed admissions, and held that request numbers 1, 3, 4, 5, 6, 13, 14, 16, 27, 28, 31, 32, 33, 34, 35, 36, and 37 in the second set of requests for admission were deemed admitted. (Order at 7, Dkt. 189.) Therefore, to the extent Plaintiffs seek to rely upon any other admissions, they cannot do so. Plaintiffs do, however, set forth admission numbers 3, 4, 5, 6, 13, 14, and 16 as relevant and material to their motion for summary judgment. Those admissions are that MERS is not entitled to payment under the Note; that MERS has no legal interest, beneficial interest, or

---

[5] *See, e.g.,* Dkt. 175-2 at 13, and Plaintiffs' request that all of Defendants' discovery documents be entered as evidence in support of Plaintiffs' motion for summary judgment, Dkt. 165.

**REPORT AND RECOMMENDATION - 14**

pecuniary interest in the Note; and that MERS cannot create or transfer beneficial

interests in "mortgage loans."

The lack of involvement of MERS in originating loans, and the fact it does not

have a right to payment once a loan is made, is well known. *See Cervantes v.*

*Countrywide Home Loans , Inc.,* 656 F.23d, 1034, 1039—40 (9th Cir. 2011) (explaining

the MERS system). Moreover, MERS is not named as a beneficiary of the Note, but is

named as the nominal holder of the deed. *Id.* at 1039. Thus, these purported admissions

are generally true and known, and may have an impact upon the Court's analysis, as

explained below. *Id.* at 1039—40, 1044—45 (setting forth MERS role in the underlying

mortgage transaction, but not finding such facts determinative in its analysis of the

appellants' wrongful foreclosure claim because the trustee initiated foreclosure in the

name of the lenders).[6] But the deemed admitted facts do not have any significance other

than to state what has already been written by other courts about MERS's role in modern

loan transactions.

## 4.      Misrepresentation Claim Against MERS and Select

Count IV of Plaintiffs' amended complaint asserts a claim for "fraudulent

misrepresentation" against MERS and Select. Plaintiffs purport to change their claim at

this juncture by changing the term "fraudulent" to "Deliberate and Intentional." (Pls.'

---

[6] The *Cervantes* court concluded only that the legality of MERS's role as a beneficiary "may be at issue where MERS initiates foreclosure in its own name, or where the plaintiffs allege a violation of state recording statutes based on the designation." 656 F.3d at 1044. To the extent MERS's role is important in this matter because of Plaintiffs' allegations, this is discussed later in the Court's analysis.

**REPORT AND RECOMMENDATION - 15**

Am. Mot. at 5, Dkt. 176.) Plaintiffs generally assert that MERS and Select made false statements constituting fraud, presumably by and through their actions in the underlying securitization of Plaintiffs' loan and due to the transfers documented via the MERS MIN Summary. Defendants argue that Plaintiffs have failed to state a claim for fraud; may not amend their complaint by way of their motion for summary judgment to assert a claim for "deliberate and intentional" misrepresentation; and, even if Plaintiffs could do so, no such cause of action is recognized under Idaho law.

First, Plaintiffs may not amend their claim at this juncture. Not only is Plaintiffs' request improper in the context of a motion for summary judgment, but an amendment would not be permissible under Fed. R. Civ. P. 15 and 16. In its November 16, 2011 Memorandum Decision and Order denying Plaintiffs leave to file a second amended complaint, the Court explained the standards applicable to filing an amended complaint under both Fed. R. Civ. P. 15 and 16. (Dkt. 131.) Rule 15 allows amendment of the pleadings prior to trial with leave of the court, and leave should be freely given when justice so requires.  *See Bonin v. Calderon*, 59 F.3d 815 (9th Cir.1995). The Court considers five factors—bad faith, undue delay, prejudice, futility, and whether prior amendments have been allowed. *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir.2004) However, once a scheduling order has been entered pursuant to Fed. R. Civ. P. 16(b), as in this case, a showing of "good cause" for failing to amend prior to the deadline is required. *Robinson v. Twin Falls Highway Dist.*, 233 F.R.D. 670, 672 (D. Idaho 2006)

**REPORT AND RECOMMENDATION - 16**

(citing *Coleman v. Quaker Oats*, 232 F.3d 1271, 1272 (9th Cir.2000)). Plaintiffs have satisfied neither standard.

Moreover, there is no such claim for "deliberate and intentional misrepresentation" recognized under Idaho law. Rather, whether false statements were made intentionally or deliberately is part and parcel of a fraud claim in the first instance. *See Ronconi v. Larkin*, 253 F.3d 423, 429 (9th Cir. 2001) (considering whether the defendants intentionally or with deliberate recklessness made false or misleading statements in the context of a securities fraud case).

And finally, semantics cannot change what is ultimately pled as a fraud claim, which fails for its lack of specificity. To plead fraud under Idaho law, a plaintiff must allege (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it should be acted upon by another person and in manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximate injury. *Beco Const. Co., Inc. v. Bannock Paving Co., Inc.*, 797 P.2d 863, 867—68 (Idaho 1990). The party alleging fraudulent misrepresentation has the burden of proving all the elements of fraud by clear and convincing evidence. *Faw v. Greenwood*, 613 P.2d 1338, 1340 (Idaho 1980).

Plaintiffs have not presented facts establishing the prima facie elements of their claim for fraud. Plaintiffs have not plead or presented facts upon summary judgment

**REPORT AND RECOMMENDATION - 17**

establishing what false representations MERS or Select made, that Defendants possessed

the intent that their representations, whatever they were, should be relied upon by

Plaintiffs, which of the two Plaintiffs heard the representations and relied upon them, or

any injury that resulted. Other than a general claim that MERS "directly and

fraudulently" assigned the beneficial interest in Plaintiffs' loan from Ownit to "CSMC

Trust," (*see* Dkt. 168 at 12), Plaintiffs have not set forth with particularity the required

elements of their fraud claim. *See Cervantes*, 656 F.3d at 1041 (affirming denial of claim

for conspiracy to commit fraud through the MERS system because the allegations did not

identify any representation made to the plaintiffs about the MERS system or MERS's

role in the transaction).

Accordingly, Defendants are entitled to judgment as a matter of law with respect

to Plaintiffs' claim for fraud.

## 5.    Unlawful Default or Foreclosure Claim[7]

The crux of Plaintiffs' remaining claim is that MERS lacked any interest in the

underlying Note or Deed of Trust, and therefore lacked the ability to act on behalf of the

lender and assign an interest it did not possess for the trustee to begin foreclosure

proceedings. Plaintiffs assert two arguments in support of their claim that the Trustee,

---

[7] To the extent Plaintiffs assert a claim for unlawful foreclosure, their claim is premature. *See Washburn v. Bank of America, N.A.*, Case No. 1:11-cv-0019,  2011 WL 7053617 *7 (D. Idaho Oct. 21, 2011), *adopted as modified*, 2012 WL 139213 (Jan. 17, 2012), (noting that the plaintiff's claim seeking to invalidate the foreclosure action was premature, because a foreclosure sale had not occurred). Plaintiffs are still living in their home, and according to the record, no foreclosure sale has taken place. (*See* Aff. of Counsel Dkt. 159-5, which indicates that after Defendants obtained stay relief, this lawsuit ensued and no sale has taken place.)

Just Law, and the current note holder, U.S. Bank, may not proceed with foreclosure of the deed of trust. First, Plaintiffs claim there is a defect in the "chain of title" as reflected in the MERS MIN Summary because intermediate transfers of the beneficial interest in the Note were not properly endorsed nor were the transfers recorded. Second, Plaintiffs assert that MERS, and by extension the lender, lack the ability to initiate the foreclosure process because of the failure to record and endorse the intermediate transfers, resulting in the lender failing to acquire an interest in the note or deed of trust. In other words, Plaintiffs allege Defendants violated the state recording statutes applicable to nonjudicial foreclosure.[8]

### A.    *Lack of Indorsement of the Note*

There are two concepts at play here—the first is indorsement of the Note, and the second is recording of the deed of trust. With respect to the Note, Plaintiffs argue that the lack of intermediate indorsement is fatal to the ability of Defendants, specifically MERS, to initiate foreclosure proceedings. Defendants argue that, under Article 3 of the Uniform Commercial Code, no indorsement is required. The Court agrees with Defendants.

The Note constitutes an instrument under Idaho Code §28-3-104(5), payable initially to Ownit. *See* Idaho Code § 28-3-110. A "transfer" of an instrument occurs when it is delivered to another, and the person receiving delivery is given the right to enforce

---

[8] This question was not answered by the Idaho Supreme Court in *Trotter v. Bank of New York Mellon*, 275 P.3d 857 (Idaho 2012). Rather, the question in *Trotter* was not that the procedural requirements under the Deed of Trust Act were not satisfied, but that before a party may make use of those procedures, it must demonstrate its right to use them. 275 P.3d at 861.

**REPORT AND RECOMMENDATION - 19**

the instrument. Idaho Code § 28-3-203(1). An instrument may be transferred with or without an indorsement. Idaho Code § 28-3-203(3).[9] If an instrument is transferred without an indorsement, the transferee does not become a holder of the instrument, but still has an enforceable right to the unqualified indorsement of the transferor, and may enforce the right to payment as a non-holder in possession. Idaho Code 28-3-208(3); *In re Wilhelm*, 407 B.R. 392, 401 (Bankr. D. Idaho 2009) (explaining how a nonholder in possession may enforce rights under a note that was transferred to it.)

In other words, an indorsement is not required for a subsequent transferee to enforce the terms of a note. The transferee may not acquire the rights of a holder in due course under Idaho Code §28-3-302, but still may "prove the transaction" by which they acquired the note. *See In re Wilhelm*, 407 B.R. 392, 401 (Bankr. D. Idaho 2009). Therefore, there is no requirement under Idaho law that the assignment of the beneficial rights from Ownit to Credit Suisse First Boston, and from Credit Suisse First Boston to U.S. Bank as trustee, carry an indorsement of the Note for rights in the Note to be legally enforceable by the later transferees. The lack of indorsement, contrary to Plaintiffs'

---

[9] An indorsement means a "signature, other than that of a signer as maker, drawer or acceptor, that . . . is made on an instrument for the purpose of negotiating the instrument . . ." Idaho Code §28-3-204(1). Negotiation of an instrument entails a "transfer of possession, whether voluntary or involuntary, of an instrument by a person other than the issuer to a person who thereby becomes its holder." Idaho Code 28-3-201(a).

**REPORT AND RECOMMENDATION - 20**

argument, does not invalidate the transfers, if that is indeed what the MERS MIN

Summary is supposed to reflect.[10]

However, a transferor may transfer less than the entire instrument. Idaho Code §

28-3-203(4). It is possible under Article 3 to convey or assign ownership rights in an

instrument, but not the right to enforce the instrument. For example, a note can be sold,

and ownership rights in the note may be claimed, but physical delivery may not occur to

effect a transfer such that the new owner may enforce the terms of the note. Idaho Code §

28-3-203(1) and Official Comment. It is therefore possible, and permissible, for

ownership rights in a note to be conveyed, but physical possession of the note may

remain in the original holder. Similarly, a note holder could assign the right to receive

payments under the note, but retain physical possession of the note such that no transfer

occurred.

Applying the above principles to the instant case, the record reflects that there

were intermediate transfers of the "beneficial interest" in the Note from Ownit to Credit

Suisse First Boston, and then to U.S. Bank as trustee. The MERS MIN Summary reflects

these transactions. But the Note was not indorsed from Ownit to Credit Suisse, and from

Credit Suisse to U.S. Bank. However, there are no facts to suggest that Credit Suisse First

Boston ever physically possessed the Note such that a transfer, which requires physical

---

[10] *Cervantes* explained that the MERS system tracks the transfer of the "beneficial interest" in home loans, and that these interests are bundled and sold to investors as mortgage-backed securities. *Cervantes*, 656 F.3d at 1038—39.

**REPORT AND RECOMMENDATION - 21**

delivery under Idaho Code §28-3-203(1), occurred. The documentation in the MERS system of a "transfer of beneficial interest" in the Note cannot be construed on this record to equate with physical delivery of the Note, considering MERS maintains a computer data base used to track ownership of the beneficial interest in individual loans. *See Cervantes*, 656 F.2d at 1038 ("If the lender sells or assigns the beneficial interest in the loan to another MERS member, the change is recorded only in the MERS database. . .").

Rather, the record indicates Select acquired physical possession of the Note upon Ownit's indorsement of the Note to U.S. Bank, as trustee, by Select, its attorney-in-fact . (Aff. of SPS Agent ¶5, Dkt. 159-3 at 3.) Considering the lack of any evidence that the Note was transferred to the intermediate beneficial owners, Ownit retained the authority, under Idaho Code § 28-3-203(3), to transfer the Note with its indorsement to U.S. Bank. Upon transfer and indorsement of the Note, U.S. Bank became the holder of the Note entitled to enforce the right to payment, and U.S. Bank delegated the duty of enforcing the right to payment to Select under the limited power of attorney signed on February 2, 2007.

### B.  *Recording of Intermediate Transfers*

Plaintiffs next argue that MERS's failure to record the intermediate transfers of the Note is fatal to the ability of the Trustee to foreclose the Deed of Trust. This argument relies upon the legal principle that a transfer of the note secured by a mortgage carries with it the security, Idaho Code § 45-911, and the requirement that the trustee may

**REPORT AND RECOMMENDATION - 22**

foreclose only if "[t]he trust deed, any assignments of the trust deed by the trustee or the beneficiary and any appointment of a successor trustee are recorded . . . ." Idaho Code § 45-1505. Thus, the argument is that any transfer of a note, which carries with it the security, requires recording under Idaho Code § 45-1505.[11]

Courts adopting the approach Plaintiffs advocate interpret the word "any" found in Idaho Code §45-1505 to mean that any time the underlying note is transferred, that causes a transfer of the trust deed as well, and therefore that transfer must be recorded. *See James v. Recontrust Co.*, 2011 WL 3841558 *11 (D. Or. Aug. 26, 2011), *not adopted by* 845 F.Supp.2d 1145(D. Or. Feb. 29, 2012) (explaining that, because the note necessarily causes an assignment of the security instrument, Oregon law requires the recording of an assignment of the beneficial interest in the trust deed for each transfer of the note).

The Court disagrees with the above argument and approach to interpreting Idaho Code § 45-1505. First, nothing in Idaho law prohibits the lender, in this case Ownit, from designating MERS as its nominee or agent in the deed of trust. As a nominee, MERS is "designated to act for another as his representative in a rather limited sense" and a

---

[11] Oregon's statute also requires the recording of "any assignments of the trust deed," and some Oregon courts have held that a transfer of the note, because it carries with it the beneficial interest in the trust deed, requires recording of the assignment of the beneficial interest in the trust deed between all intermediate transferees of the note reflected in the MERS system. *James v. Recontrust Co.*, 2012 WL 653871 (D. Or. Feb. 29, 2012). Other courts have, however, reached a different conclusion, and there currently is a split of authority among Oregon courts. *See Moreno v. Bank of America, N.A.*, 2012 WL 1462338 (D. Or. April 27, 2012) (discussing the disagreement in various Oregon decision).

**REPORT AND RECOMMENDATION - 23**

nominee "is used sometimes to signify an agent or trustee." *Schuh Trading Co. v.*

*Comm'r of Internal Revenue*, 95 F.2d 404, 411 (7th Cir. 1938). Therefore, MERS is

authorized to act as Ownit's agent or representative with respect to any duties Ownit

could undertake pursuant to the terms of the Deed of Trust. *See Hobson v. Wells Fargo*

*Bank, N.A.*, No. 1:11-cv-00196-BLW, 2012 WL 505917 * 5 (D. Idaho Feb. 15, 2012)

(concluding MERS had the authority to assign its beneficial interest in the Deed of Trust

under the express terms of the trust deed designating MERS as the beneficiary and agent

of the lender); *see also Thompson v. Bank of New York Mellon*, No. 3:12-cv-00066-MO,

2012 WL 1253203 *3 n.5 (D.Or. Apr. 12, 2012 (finding no reason MERS cannot be both

a nominee and the beneficiary under a deed of trust, an arrangement for which both

parties expressly contracted).

    Second, Plaintiffs do not explain why the provision in the Deed of Trust defining

the scope of MERS's authority to act as an agent on the Lender's behalf is invalid. The

Deed of Trust explained that MERS holds legal title to the interests granted by Plaintiffs,

but that MERS, as nominee for the Lender and Lender's successors and assigns, has the

right to exercise all of those interests, and to take action required of Lender. This

contractual provision grants to MERS the right to exercise all rights and interests of the

Lender, including the power to appoint a successor trustee and assign its interest in the

Deed of Trust. *Washburn v. Bank of America, N.A.*, Case No. 1:11-cv-00193, 2011 WL

7053617 *6 n.13, (D. Idaho Oct. 21, 2011), *adopted as modified*, 2012 WL 139213 (Jan.

**REPORT AND RECOMMENDATION - 24**

17, 2012) (noting that MERS, as the nominee for the Lender with legal title to the interest granted by Borrower in the Trust deed, is able to exercise rights that would otherwise be exercised by the Lender); *Hobson*, 2012 WL 505917 *5. But MERS's mere designation in the trust deed as the Beneficiary of the security agreement, and as Lender's nominee, does not alter the fact that the holder of the note (the lender) would still be entitled to repayment of the loan and is the proper party in whose name foreclosure is initiated after the borrowers' default. *Cervantes*, 656 F.3d at 1044.

Thus, MERS, as the Lender's agent, had the authority to execute the appointment of trustee and appoint Just Law as the successor trustee to LandAmerica on April 28, 2008. And, MERS's later assignment on May 2, 2008, of its interest in the Deed of Trust, together with the Note to U.S. Bank as Trustee, was similarly authorized. By then, U.S. Bank as Trustee, by and through its attorney-in-fact Select, possessed the indorsed Note such that U.S. Bank was the holder of the Note and was now assigned all interest in the Deed of Trust. Both the assignment of the Deed of Trust to U.S. Bank as trustee and the appointment of Just Law as Trustee of the Deed of Trust were recorded in proper succession on May 27, 2008. Once the Note was indorsed and transferred and the Deed of Trust was assigned to U.S. Bank, Just Law as the successor trustee had the authority to act as the agent of the holder of both the deed and the note together, and caused to be recorded a Notice of Default identifying U.S. Bank as the beneficiary under the Deed of Trust. *See Cervantes*, 656 F.3d at 1039 (explaining that before the trustee has the legal

**REPORT AND RECOMMENDATION - 25**

power to foreclose, the trustee must have the authority to act as the holder, or agent of the holder, of both the deed and the note together).

Nothing in Idaho law requires recording each assignment of the trust deed based upon transfer of the underlying Note. Idaho Code § 45-1505(1) requires "any assignment of the trust deed by the trustee or the beneficiary" to be recorded before a nonjudicial foreclosure by advertisement and sale may occur. This statute, by its terms, requires only the recording of assignments by parties who have a recorded interest in the real property providing security, and specifically names the trustee or the beneficiary.

Although a transfer or assignment of the note transfers the security interest, it is not the same act as an assignment of the trust deed by the trustee or the beneficiary. The statute does not refer to a recording of the transfer of the note, only the deed of trust. The promissory note is not a security instrument, does not convey real property, and therefore is not subject to recording. *See* Idaho Code  55-801 (limiting recording to "any instrument or judgment affecting title to or possession of real property); *see also* Idaho Code §55-809 (when an instrument is deemed recorded); Idaho Code § 55-818 (effect of recording a summary of an instrument).

Further, recording an interest in a promissory note would not serve the purpose of the recording statutes, because the promissory note does not contain a description of the property, does not transfer title to the property, and does not affect title. Provided the initial conveyance of the real property and the security interest taken in the property is

**REPORT AND RECOMMENDATION - 26**

recorded, this initial recording satisfies the purpose of the recording statutes, which is simply to give notice of an interest in the real property or that might affect title to the real property. Idaho Code § 55-811. Here, the Deed of Trust recorded on July 12, 2006, provided notice of the conveyance and mortgage interest in Plaintiffs' property to all subsequent purchasers and mortgagees. Nothing more would be accomplished by causing the "intermediate transferees" of the beneficial interest in the Note to record their interests. Plaintiffs do not explain the injury they suffered by MERS's failure to record the intermediate transfers of the beneficial interest in the Note, and provided Plaintiffs were informed where to send their payments, the Court cannot discern any damages.

Moreover, the recording statutes do not require instruments to be recorded, considering unrecorded instruments are valid between the parties that created them, and those who have actual notice of them. Idaho Code § 55-815. Thus, the Court can discern no logical reason why Idaho Code § 45-1505(1) should be interpreted to require "all" beneficial assignments of the trust deed premised upon an assignment of the note to be recorded, when the recording statutes do not require recording in the first instance other than to give notice to later purchasers of a prior interest in the property. The only purpose for recording the assignment of a trust deed before a trustee may foreclose is to give notice of the beneficiary entitled to foreclose. Thus, the intermediate transferees of the

**REPORT AND RECOMMENDATION - 27**

beneficial interests in the note simply do not matter for purposes of determining whether the procedural requirements under the Deed of Trust Act were satisfied.[12]

Finally, Plaintiffs do not allege that either the Trustee (Landamerica) or the Beneficiary (MERS) named in the Deed of Trust made any actual assignment of the Deed of Trust prior to its assignment by MERS to U.S. Bank. Until that time, MERS remained the nominal beneficiary named in the Deed of Trust to act for the Lender, and its successors and assigns, even if the Note (or the ownership interest or some lesser interest in the Note) was sold to an assignee, such as Credit Suisse in this case. By recording the appointment of successor trustee and the assignment of the Deed of Trust from MERS to U.S. Bank, who possessed the Note by indorsement and transfer to its attorney-in-fact, Select, U.S. Bank then acquired the power to act as the Beneficiary under the Deed of Trust and could direct the Trustee to initiate foreclosure proceedings. MERS never "assigned" any interest it had in the Deed of Trust to the intermediate owners of the beneficial interest in the Note and, therefore, did not need to record anything prior to initiating a nonjudicial foreclosure under Idaho Code § 45-1505.

Plaintiffs' reliance upon *Hooker v. Mortgage Electronic Registration Systems, Inc.*, 2011 WL 2119103 (D. Or. May 25, 2011), is misplaced. That case involved a motion to dismiss, not a motion for summary judgment, and the court reviewed only the

---

[12] There could be a factual scenario where the recording of intermediate transferees would matter. *Cervantes* explained that if the beneficial interest in the loan is sold to a non-MERS member, the transfer of the deed from MERS to the new lender is recorded in county records and the loan is no longer tracked in the MERS system. 656 F.3d at 1039. Such is not the case here.

**REPORT AND RECOMMENDATION - 28**

MERS MIN summary. In contrast, the Court here has more than the MERS MIN summary. Second, the Court disagrees with *Hooker's* conclusion that the MERS MIN summary tracks transfers of the beneficial interest in the trust deed. *Hooker*, 2011 WL 2119103 *4. As explained above, the MERS system tracks the beneficial interest in the note, which is distinguishable from an assignment of the trust deed by the trustee or the beneficiary contemplated in Idaho Code § 45-1505(1).

### C.   *Standing and "Split the Note" Theories*

Plaintiffs assert that Defendants, due to their absence of authority under the Note or Deed of Trust to transfer their interests in the same, now lack standing to conduct a trustee's sale. Plaintiffs specifically assert MERS's and Select's lack of "standing," relying upon bankruptcy decisions issued by this Court and others concluding that a creditor must establish it is a party in interest with standing entitled to seek relief from the automatic stay, 11 U.S.C. § 362. *See In re Sheridan*, 2009 WL 631355 (Bankr. D. Idaho 2009). But bankruptcy principles have no application to nonjudicial foreclosure. *Trotter v. Bank of New York Mellon*, 275 P.3d 857, 862 n.3 (Idaho 2012) ("federal bankruptcy cases ... are inapplicable in the context of nonjudicial foreclosure."). A creditor with a claim against the bankruptcy estate must establish a pecuniary interest in the case, meaning the right to payment under the note, before the creditor may obtain stay relief. *In re Sheridan*, 2009 WL 631355 *2. In contrast, before a nonjudicial foreclosure may take

**REPORT AND RECOMMENDATION - 29**

place by notice and sale, the trustee must simply comply with Idaho Code § 45-1505. *Washburn v. Bank of America, N.A.*, 2011 WL 7053617 *7 n.16 (D. Idaho Oct. 21, 2011).

Recently, the Idaho Supreme Court decided *Trotter v. Bank of New York Mellon*, 275 P.3d 857 (Idaho 2012), and rejected standing arguments similar to those asserted by Plaintiffs here. There, the plaintiff argued that, before a party may foreclose under the Idaho Trust Deeds Act, Idaho Code §§ 45-1502—1515, it must establish its standing to foreclose by proving it is the current owner of the mortgage, which comprises both the Note and the Deed of Trust. The Idaho Supreme Court held that the foreclosure process under the Trust Deeds Act is not a judicial proceeding, and therefore, no "standing" need be proven because the procedure to foreclose on trust deeds exists outside of the judicial process. *Trotter*, 275 P.3d at 861. Thus, under whatever theory of standing a plaintiff utilizes to argue that the lender, trustee, or MERS, lacks the authority to foreclose, *Trotter* holds that no "standing" need be shown. Rather, the highest state appellate court in Idaho held that the trustee may foreclose by advertisement and sale, provided the trustee complies with the requirements contained within the Trust Deeds Act. *Id*. Here, the Court concludes that the requirements of the Trust Deed Act were complied with.

The last line of cases upon which Plaintiffs rely involve those that discuss "splitting the note from the deed." For instance, *Landmark Nat'l Bank v. Kesler*, 216 P.3d 158, 167 (Kan. 2009), explained that if the note is held by one party, but the deed of trust is held in the name of another, such as MERS, the "split" could result in an unenforceable

**REPORT AND RECOMMENDATION - 30**

mortgage. The court noted other courts had held that an assignment by MERS of the deed of trust separate from the note had no force or effect in the absence of evidence that the original holder of the note authorized MERS to transfer the note. *Landmark Nat'l Bank*, 216 P.3d at 167.

Although the Court is presented here with an assignment by MERS of its interest in the Deed of Trust to U.S. Bank on May 2, 2008, the issue in *Landmark* does not exist here. Ownit indorsed and transferred the Note to U.S. Bank by and through Select, its attorney in fact. MERS transferred its interest in the Deed of Trust to U.S. Bank on May 2, 2008. Thus, the note holder and the secured party were one and the same on May 27, 2008, when all of the necessary documents were recorded to initiate the foreclosure proceedings. *See Cervantes*, 656 F.3d at 1039.

**6.   Motion for Preliminary Injunction by Defendant Select**

Defendant Select's motion requests that Plaintiffs pay their mortgage obligation of $952.40 every month to the Clerk of the Court or another suitable entity, with the funds applied to their mortgage obligation if Select prevails in this action. Additionally, Select requests reimbursement for advances it has made to pay real property taxes and hazard insurance.

Given that the Court is recommending Plaintiffs' motion for summary judgment be denied and Defendants' motion be granted, the Court sees no purpose in recommending that Select's request that Plaintiffs pay their mortgage payments each

**REPORT AND RECOMMENDATION - 31**

month be granted. Instead, it appears appropriate to recommend that judgment be granted in favor of Select, and allow Defendants to continue with the foreclosure sale.

Moreover, although not addressed in Select's motion, Plaintiffs' bankruptcy discharge prevents the Court from granting the relief Select requests. Plaintiffs each filed for bankruptcy under Chapter 7 of the Bankruptcy Code, and Plaintiff O'Banion received a discharge on May 8, 2008, while Plaintiff Bradley received a discharge on February 25, 2009. A discharge under 11 U.S.C. § 727(b) discharges the debtor from all debts that arose before the filing of the bankruptcy petition, while the discharge injunction arising under 11 U.S.C. § 524 prohibits creditors from collecting debts from the debtor that were discharged. The mortgage debt for which Select is the servicer is a pre-petition debt that was discharged. Accordingly, under the power of attorney granted to Select by U.S. Bank, Select may exercise the right to enforce U.S. Bank's lien on the real property by foreclosure. But Select may not collect payments on the debt from the debtors. *In re Watson*, 192 B.R. 739, 749 n.8 (9th Cir. BAP 1996); *In re Victorio*, 454 B.R. 759, 772—73 (Bankr. S.D. Cal. 2011) (explaining that the bankruptcy discharge extinguishes only one mode of enforcing a claim, namely an action against the debtor *in personam* but leaves intact an action against the debtor *in rem*).

Nothing in the Bankruptcy Code would, however, prevent Plaintiffs from voluntarily paying the debt if they so choose, or by acquiring title to the property by

**REPORT AND RECOMMENDATION - 32**

paying the bid price at that Trustee's sale pursuant to Idaho Code §45-1506(9). But the Court cannot order Plaintiffs to pay the debt under the guise of Select's motion.[13]

## CONCLUSION

The Court concludes that MERS, as the named and nominal beneficiary in the Deed of Trust, had the authority to appoint a successor trustee and caused to be recorded all necessary assignments of the Deed of Trust required for a nonjudicial foreclosure under Idaho Code § 45-1505. Select, as the attorney-in-fact for U.S. Bank, is now in possession of the indorsed note from Ownit, the original note holder. MERS assigned its interest in the Deed of Trust to U.S. Bank. The note holder and the beneficiary under the deed of trust are the same, and the appointed Trustee, Just Law, has the authority to act as the agent of the holder of both the deed and the note. Thus, summary judgment should be granted in favor of Defendants with respect to Plaintiffs' claims premised on a lack of authority by MERS or Select to take the acts they did to initiate foreclosure proceedings under the Idaho Trust Deeds Act or their failure to comply with the Idaho Trust Deeds Act.

---

[13] The Court notes also that Idaho Code 45-1505(4) permits a trustee to foreclose a trust deed provided "[n]o action, suit or proceeding has been instituted to recover the debt then remaining secured by the trust deed, or any part thereof . . . ." (emphasis added). This statute requires the trustee to elect a remedy---recover the debt, or recover the security---but he may not do both. Select's motion to collect unpaid and overdue mortgage payments may therefore run afoul of this statute as well.

**REPORT AND RECOMMENDATION - 33**

**RECOMMENDATION**

**NOW THEREFORE IT IS HEREBY RECOMMENDED:**

1) Motion for Preliminary Injunction (Dkt. 127) be **DENIED**.

2) Motion for Summary Judgment by Defendants Select Portfolio Services, Inc. and Mortgage Electronic Systems (Dkt. 159) be **GRANTED**.

3) Motion in Limine (Dkt. 164) be **DENIED**.

4) Motion for Summary Judgment by Plaintiffs, (Dkt. 168), and Amended Motion for Summary Judgment by Plaintiffs, (Dkt. 176), be **DENIED**.

Written objections to this Report and Recommendation must be filed within fourteen (14) days pursuant to 28 U.S.C. § 636(b)(1) and Dist. Idaho L. Rule 72.1(b), or as a result of failing to do so, that party may waive the right to raise factual and/or legal objections to the United States Court of Appeals for the Ninth Circuit.

Dated: **August 22, 2012**

Honorable Candy W. Dale
United States Magistrate Judge

**REPORT AND RECOMMENDATION - 34**